### TRAYLOR ENGINEERING & MANUFACTURING DIVISION OF FULLER COMPANY

v.

### UNITED STEELWORKERS OF AMERICA

and

### Erwin A. Leppert.
### Civ. A. No. 34047.

United States District Court
E. D. Pennsylvania.
Aug. 27, 1963.

E. Jackson Bonney, John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Don F. D'Agui, D'Agui & Del-Collo, Philadelphia, Pa., for defendants; Samuel L. Rothbard, Abraham L. Friedman, Newark, N. J., of counsel.

LUONGO, District Judge.

After hearing, upon pleadings, proof and stipulation of the parties, the Court makes the following

**898**

### FINDINGS OF FACT

1. Plaintiff, Traylor Engineering & Manufacturing Division of Fuller Company, hereinafter referred to as Company, is a Delaware corporation which has its principal place of business at 124 Bridge Street, Catasauqua, Pennsylvania.

2. Defendant, United Steelworkers of America, hereinafter referred to as Union, is an unincorporated labor association having an office at 1330 Center Street, Bethlehem, Pennsylvania.

3. Defendant Erwin A. Leppert is the staff representative of the defendant Union. He maintains his office as such at 1330 Center Street, Bethlehem, Pennsylvania.

4. This action is brought under Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a), and under the Federal Declaratory Judgment Act of 1948, as amended, 28 U.S.C. § 2201 et seq.

5. Plaintiff Company is an employer within the meaning of the provisions of 29 U.S.C. § 185(a) and defendant Union is a labor organization within the meaning of said section.

6. On or about October 31, 1962, plaintiff Company and defendant Union executed a collective bargaining agreement which is now in effect and was in full force and effect at all times material hereto.

7. Said agreement provides, inter alia, as follows:

"5.2 E. Any dispute, claim or grievance arising out of or relative to this Agreement shall be submitted to Arbitration under the Voluntary Labor Arbitration Rules, then obtaining, of the American Arbitration Association. The parties agree to abide by the award, subject to such regulations as, any Federal Agency having jurisdiction may impose. The Parties further agree that there shall be no suspension of work when such dispute arises and while it is in process of adjustment or arbitration."

"7.1 Either party to this Agreement shall have the right to refer to the American Arbitration Association any difference, grievance, or dispute which has not been satisfactorily adjusted by means of the steps established in Article V of this Agreement."

8. On or about March 26, 1963, Union filed with the American Arbitration Association a demand for arbitration setting forth six grievances, of which two were related. This arbitration proceeding will be hereinafter referred to, for purposes of identification only, as the "multiple grievance case".

9. Under the rules of the American Arbitration Association the parties then proceeded to the selection of Emanuel Stein to act as the arbitrator in said case, but in so doing the Company at all times contended that said arbitrator had no power to hear more than one of the aforesaid grievances.

10. On or about June 18, 1963, plaintiff Company submitted to the American Arbitration Association its demand for arbitration of the following dispute:

"Whether or not an arbitrator has the power under the collective bargaining agreement between the parties to hear multiple grievances at the request of the Union demanding arbitration, in the face of the company's objection thereto."

This demand has been referred to in plaintiff's pleadings and will be referred to hereinafter, for purposes of identification only, as the "threshold case".

11. Under the rules of the American Arbitration Association, the parties then selected Arbitrator S. Herbert Unterberger to hear and resolve the dispute in the "threshold case".

12. As of the date of the hearing, Arbitrator Stein, acting through the American Arbitration Association, has fixed August 27, 1963, as the date for the hearing in the "multiple grievance case" and Arbitrator Unterberger, acting through the American Arbitration Association, has fixed September 10, 1963,

as the date for the hearing in the "threshold case".

13. Plaintiff Company has endeavored to effect such a change in said hearing dates as would permit Arbitrator Unterberger to hear and decide the "threshold case" prior to defendant Union's presentation of more than one of its grievances in the "multiple grievance case" before Arbitrator Stein but in this endeavor plaintiff Company has had no success.

14. Plaintiff Company has acted in good faith in insisting upon a hearing and determination of the "threshold case" prior to the submission of more than one of the grievances in the "multiple grievance case" to Arbitrator Stein.

15. Defendant Union has acted in good faith in refusing to agree to a rescheduling of the date set for the "threshold case" to permit it to be heard and determined prior to the hearing of the "multiple grievance case" before Arbitrator Stein.

16. It has not been shown that defendants have threatened or have committed and will continue to commit unlawful acts unless restrained.

17. Union has not refused to arbitrate any dispute submitted by Company for arbitration.

## CONCLUSIONS OF LAW

1. This proceeding arises out of a labor dispute.

2. There has been no showing that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained and this Court lacks jurisdiction to grant injunctive relief.

3. The dispute which is the subject matter of the instant proceeding concerns the meaning and interpretation of the collective bargaining agreement between the parties and comes within the purview of their agreement to arbitrate such disputes.

4. Defendants have not refused to arbitrate any dispute submitted by Company for arbitration.

5. Defendants have not violated the collective bargaining agreement and no cause exists therefore under section 301 of the Labor Management Relations Act, 1947, for the issuance of process against defendants to compel compliance with the agreement to arbitrate.

## DISCUSSION

This is a proceeding in which Company seeks a preliminary injunction.

Company and Union are parties to a collective bargaining agreement containing a "no strike" clause and a broad agreement to arbitrate disputes "arising out of or relative to this Agreement * * *"

On March 26, 1963, Union submitted several unrelated grievances to arbitration. Arbitrator Stein was selected by the parties to hear that "multiple grievance case". Company objected to the submission of multiple unrelated grievances to a single arbitrator but it did not formally submit to Stein the issue of his jurisdiction to hear more than one grievance, instead, on June 18, 1963, Company submitted for arbitration, as a separate issue, the power of an arbitrator "under the collective bargaining Agreement between the parties to hear multiple grievances * * *" Company's issue has been denominated by it the "threshold case" and will be referred to in this Opinion by that designation for the purpose of convenient identification only. Arbitrator Unterberger was selected to hear the "threshold case".

Stein has fixed August 27, 1963 for hearing the "multiple grievance case" and Unterberger has fixed September 10, 1963 for hearing the "threshold case". Company seeks to enjoin Union from proceeding with the "multiple grievance case" before Stein until the "threshold case" has been heard and determined by Unterberger.

■■ This case is one growing out of a labor dispute. Section 7 of the Norris-LaGuardia Act denies the federal courts jurisdiction to issue injunctions in controversies growing out of labor dis-

putes. 29 U.S.C.A. § 107. Certain narrow exceptions to that prohibition have been created by statute. Section 7 itself creates such an exception in cases where "unlawful acts have been threatened * * * or have been committed . . . ." 29 U.S.C.A. § 107(a); Publishers' Ass'n of New York City v. New York Mailers' Union Number Six, 317 F.2d 624 (2nd Cir., 1963). There has been neither allegation nor proof in the instant case to bring it within the exception contained in section 7. Another exception to the strictures of section 7 is contained in section 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185 (a). That section has granted to federal courts the power to entertain suits for violation of contracts between an employer and a labor organization and has been interpreted to permit the issuance of injunctions to compel compliance with agreements to arbitrate. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 458–459, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

In instituting these proceedings under section 301(a), Company contends that Union has violated the collective bargaining agreement by refusing to arbitrate the "threshold case" prior to hearing of the multiple grievances. Company's reasoning in that regard is somewhat strained. Stating it as briefly and clearly as I am able, Company's contention seems to be: Company is entitled to arbitration of the issue submitted by it; it will be deprived of the right to arbitration unless the arbitration is "meaningful"; in order for the arbitration of its issue to be meaningful, the decision on it must be applicable to and binding upon the multiple grievances pending before Stein; in order to have such effect, the "threshold case" must be heard and determined before the multiple grievances have been heard; by refusing to agree to a rescheduling of dates to permit the "threshold case" to be heard and decided prior to the "multiple grievance case", Union has refused "meaningful" arbitration of Company's issue.

■ Section 301(a) is not a broad grant of power. The federal courts have the power to compel parties to arbitrate but, in doing so, the courts may not resolve the very issues which the parties have agreed are to be resolved by the arbitrators. Where, as here, there is a broad arbitration provision, any dispute which on its face is encompassed within the provision, and which has not been specifically excluded, must be resolved through arbitration. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Yale & Towne Mfg. Co. v. Local Lodge No. 1717, 299 F.2d 882 (3rd Cir., 1962); R. C. A. v. Association of Prof. Eng. Personnel, 291 F.2d 105 (3rd Cir., 1961); International Telegraph & Telephone Corp. v. Local 400, Prof., Tech. & Salaried Div., Internat'l Union of Elec. Workers, 286 F.2d 329, 330–331 (3rd Cir., 1960). The function of the Court is simply to characterize the issue before it, to determine whether or not the issue is included within the agreement to arbitrate.

■ In seeking to restrain the hearing of the "multiple grievance case" and in claiming the right to priority of resolution of the "threshold case", Company has done no more than to articulate a dispute concerning the meaning of the agreement. Whether or not Company is entitled to priority of the resolution of the "threshold case", and whether, therefore, Union's refusal to agree to a rescheduling of the date set for hearing on that issue constitutes a refusal to arbitrate, can only be determined from the terms of the collective bargaining agreement. The parties are in vigorous disagreement as to Company's right to such priority. They are likewise in disagreement on related questions, e. g. whether Unterberger's award in the "threshold case" will be binding upon the multiple grievances before Stein; whether Unter-

berger's award will have meaning apart from its applicability to the grievances before Stein, the one contending that the award by Unterberger will have prospective effect for the life of the agreement between the parties, and the other contending that it will have no effect whatsoever. Their disagreements constitute disputes concerning the meaning of the agreement. The parties have committed all such disputes to arbitration. Having determined that the dispute before me comes within the purview of the parties' agreement to arbitrate, I can proceed no further.

Company's motion for preliminary injunction will be denied.